UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CLIF ADOLF J.,[1]

    Plaintiff,

    v.

SSA COMMISSIONER, et al.,

    Defendants.

Case No. 25-cv-05548-JST

**ORDER ON SOCIAL SECURITY APPEAL**

Re: ECF No. 9

Before the Court is Plaintiff's request for judicial review under 42 U.S.C. § 405(g) of the Social Security Commissioner's partially favorable decision, which found that he became disabled on January 25, 2022. The Court will remand this action for further proceedings consistent with this opinion.

I.    **BACKGROUND**

Plaintiff filed a claim for disability insurance benefits with an alleged onset date of July 27, 2019. AR 17. His claim was denied initially and on reconsideration. *Id*. Plaintiff then requested a hearing, which was held on November 21, 2023. *Id*. After the hearing, an administrative law judge ("ALJ") issued a partially favorable decision on May 14, 2024, finding Plaintiff disabled beginning January 25, 2022. *Id*.; AR 35.

At the hearing, Plaintiff testified that he was injured in July 2019 when an SUV backed into him as he was walking in a parking lot. AR 58. He testified that, since the accident, he experienced constant back pain whether lying down, sitting, or standing. AR 59–60. He further

---

[1] The Court partially redacts Plaintiff's name to mitigate privacy concerns, as suggested by the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See also* Fed. R. Civ. P. 5.2(c)(2)(B).

testified that he needed to alternate between sitting, standing, and walking approximately every 15 minutes. *Id.*

Following the accident, Plaintiff sought treatment for his symptoms. The administrative record contains a longitudinal medical history that the ALJ considered in evaluating his functional limitations. The record includes clinical examinations, diagnostic testing, and provider assessments documenting Plaintiff's condition over time. *See, e.g.*, AR 375, 802, 6589, 6602, 6748. Plaintiff's medical records document his reports of constant back pain that persisted whether lying, sitting, or standing, required him to alternate positions approximately every 15 minutes, and worsened with movement, activity, and lifting, along with daily imbalance. AR 6238, 6806, 1351.

The ALJ determined that Plaintiff had "degenerative disc disease; obesity; bilateral median neuropathy; right ulnar neuropathy; diabetes with neuropathy; right shoulder osteoarthritis and rotator cuff tear; hearing loss; [and later] atrial fibrillation; [and] venous stasis." AR 20. Although these impairments were severe, the ALJ found that they did not meet or equal any listed impairment, that is, a condition considered so serious that it automatically qualifies as disabling. *Id.* The ALJ therefore evaluated Plaintiff's residual functional capacity and found that, prior to January 25, 2022, Plaintiff could perform light work with additional limitations. AR 22. Based on that assessment, the ALJ found that Plaintiff was not disabled prior to that date because he was able to perform his past relevant work as a stock control supervisor. AR 28. Beginning January 25, 2022, however, the ALJ found that Plaintiff's condition had worsened, citing the development of atrial fibrillation and venous stasis, as well as worsening objective findings including abnormal gait, decreased sensation and reflexes, increased pain with range of motion, and imaging showing progression of degenerative changes in the spine. AR 28–29. The ALJ therefore found that Plaintiff could no longer perform his past relevant work nor any other jobs existing in the national economy. AR 35.

The Social Security Appeals Council denied review on May 2, 2025. AR 1. Plaintiff then filed this action seeking judicial review of the Commissioner's decision. ECF No. 9.

United States District Court
Northern District of California

2

## II.    LEGAL STANDARD

As the Ninth Circuit has summarized:

> The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act.  The burden of proof is on the claimant as to steps one to four.  As to step five, the burden shifts to the Commissioner.  If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citation modified).

> The five-step process requires the ALJ to determine: (1) whether the claimant is presently working in a substantially gainful activity; (2) whether the claimant's impairment is severe; (3) whether the impairment meets or equals one of a list of specific impairments described in the Social Security Regulations; (4) whether the claimant is able to do any work that he or she has done in the past; and (5) whether the claimant is able to do any other work.

*Maxwell v. Saul*, 971 F.3d 1128, 1130 n.2 (9th Cir. 2020) (citation modified).

Courts "may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole."  *Tackett*, 180 F.3d at 1097.  "Even when the ALJ commits legal error, [courts] uphold the decision where that error is harmless," meaning that "it is inconsequential to the ultimate nondisability determination," or that "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citation modified).

When considering whether substantial evidence supports the ALJ's decision, courts "review the administrative record in its entire[ty] . . . , weighing evidence that supports and evidence that detracts from the ALJ's determination," *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992), and "leav[ing] it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record," *Treichler*, 775 F.3d at 1098.  "Substantial evidence is 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Drouin*, 966 F.2d at 1257 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the ALJ."  *Id.* at 1258.  Courts

may not "affirm the denial of benefits on a ground not invoked by the Commissioner in denying the benefits originally." *Pinto v. Massanari*, 249 F.3d 840, 847–48 (9th Cir. 2001).

## III.    DISCUSSION

The ALJ's partially favorable decision found Plaintiff disabled beginning January 25, 2022, but not before that date.  Plaintiff contends that the ALJ erred because  (1) the established onset date of disability was not supported by substantial evidence, (2) the decision to discount Plaintiff's testimony lacked a clear and convincing rationale, (3) the medical reports of Drs. Fiesser and Golchehreh were not properly evaluated, and (4) the determination that Plaintiff could perform his past relevant work prior to January 25, 2022 was not supported by substantial evidence.  ECF No. 9 at 7–22.  As set forth below, the Court agrees with Plaintiff that the ALJ erred in determining he could perform his past relevant work prior to January 25, 2022, and remands the matter for further proceedings.

### A.    Onset Date of Disability

Plaintiff argues that the ALJ's selection of January 25, 2022, as the established onset date was arbitrary and unsupported by the record, asserting that the objective medical evidence reflects disabling limitations back to his July 2019 work injury.[2]  ECF No. 9 at 7–12.  He further contends that the ALJ relied on evidence that either predated or postdated January 25, 2022, without explaining why that specific date marked the onset of disability.  *Id.*  The Commissioner responds that the ALJ reasonably found that Plaintiff became disabled in January 2022, when the record showed worsening impairments.  ECF No. 11 at 8–9.  The Court agrees with the Commissioner.

The established onset date is "the earliest date that the claimant meets both the definition of disability and the non-medical requirements for entitlement to benefits."  *See* Soc. Sec. Ruling, SSR 18-01P; Titles II & XVI: Determining the Established Onset Date (EOD) in Disability Claims, SSR 18-01P (S.S.A. Oct. 2, 2018).  For traumatic impairments, the agency begins with the date of the traumatic event and uses that date if the evidence supports disability as of that time.  *Id.*

---

[2] A claimant can qualify for SSDI only if her disability begins by her date last insured, and these benefits can be paid for *up to* 12 months before her application was filed.  *See* 42 U.S.C. § 423(a)(1), (c)(2), (d)(1)(A).  Here, Plaintiff would only be eligible dating back to January 2021 because his application was filed in January 2022.  AR 24.

*United States District Court*
*Northern District of California*

Where the exact day of onset cannot be determined, selection of a date within the appropriate month is permissible and does not affect the ultimate entitlement to benefits so long as the claimant was not disabled on the first day of that month. *See* Soc. Sec. Admin., Program Operations Manual System (POMS) DI 25501.300.

In determining the onset date, "[t]he ALJ is responsible for studying the record and resolving any conflicts or ambiguities in it." *Diedrich v. Berryhill*, 874 F.3d 634, 638 (9th Cir. 2017) (citing *Treichler*, 775 F.3d at 1098). In doing so, the ALJ must consider the record as a whole and may not selectively rely on evidence that supports a nondisability finding while ignoring evidence that contradicts it. *See Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001). At the same time, "'[w]here the evidence is susceptible to more than one rational interpretation, and the ALJ has provided a rational interpretation,' the district court must uphold the decision of the ALJ." *S.A. v. Kijakazi*, No. 22-CV-02938-LB, 2023 WL 6374183, at *9 (N.D. Cal. Sept. 30, 2023) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

Here, the ALJ found that Plaintiff became disabled on January 25, 2022, when his residual functional capacity was reduced to standing and/or walking no more than four hours in an eight-hour workday. AR 28–35. The ALJ explained that evidence "beginning in January 2022" showed worsening abnormalities, including unstable gait, decreased sensation, reduced reflexes, decreased range of motion, positive straight-leg-raise testing (indicating nerve irritation in the lower-back when leg is raised), positive facet loading (indicating pain in joints related to movement of the spine), and motor weakness, along with worsening spinal imaging and new lower-extremity findings. AR 28–29. She then cited medical evidence demonstrating that this decline began in January and continued thereafter, including treatment records documenting the limitations described above, and imaging reflecting progression of lumbar degeneration. AR 29.

This explanation is sufficient to support the ALJ's central finding that Plaintiff's condition transitioned from non-disabling to disabling in January 2022. While Plaintiff argues that he was disabled beginning on the date of his accident in July 2019, the ALJ reasonably relied on earlier records reflecting less severe functional limitations. *See* AR 6243 (Jan. 15, 2020: imposing limitations on lifting, carrying, pushing, and pulling but not sitting, standing, or walking); AR

United States District Court
Northern District of California

374–76 (Jan. 17, 2020: noting that Jaeger has been able to return to his usual walking routine, has no new pedal complaints, and experienced complete resolution of pain and improvement in numbness in right foot).  While those same records also contain some abnormal findings, including tenderness over Plaintiff's right paralumbar area, AR 6240, and decreased ankle dorsiflexion, AR 375, the ALJ was entitled to resolve that evidence and conclude that Plaintiff was not yet disabled during at least part of the earlier period.  *S.A.*, 2023 WL 6374183, at *9.

Plaintiff correctly observes that the ALJ did not explain why January 25, 2022, as opposed to another date within January, was selected as the precise onset date.  ECF No. 9 at 9.  The decision also cites medical evidence from January 11, 2022, documenting abnormalities, including severe increase in low back and lower-extremity radicular pain, increasing weakness, and an unstable gait, consistent with the same reasoning that the ALJ used to justify the selection of January 25.  AR 29, 4144.  Moreover, the fact that January 25, 2022, is also the date of Plaintiff's application for disability insurance benefits may suggest some arbitrariness in its selection as the onset date.  AR 17.  However, any lack of precision after January 1 but within January affected neither the ultimate disability determination nor the amount of benefits awarded.  *See Treichler*, 775 F.3d at 1099 ("[Courts] uphold the decision where that error is harmless."); POMS DI 25501.300.

In addition, it was not improper for the ALJ's to rely on post-onset reports and examinations, including ones conducted in 2023, to confirm that January 2022 marked the beginning of a sustained decline.  Those reports contextualized the trajectory of Plaintiff's impairments in light of the objective medical evidence, supporting explanations, and the record.  20 C.F.R. §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2).  The ALJ did not, as Plaintiff argues, use them to retroactively establish disability at an earlier, unsupported point.  ECF No. 9 at 9–10.

Although some reports reference the 2019 accident as the source of Plaintiff's impairments, the statute only provides that disability begins on the date of a traumatic event or injury if "the record supports a finding that the claimant *met the statutory definition of disability on* [that] date."  SSR 18-01P.  Evidence of causation alone does not satisfy this standard, as the statute distinguishes between the occurrence of an injury and the existence of a disabling

United States District Court
Northern District of California

impairment. *Id.* Contrary to Plaintiff's assertion, it can be true that "Plaintiff's 'injuries and weakness are a direct result of his accident' in July 2019," ECF No. 9 at 9, and simultaneously true that those injuries and weakness did not worsen to the level of disability until January 2022.

The evidence supports the ALJ's placement of the transition to disability within January 2022 and any lack of precision as to the exact day within that month is harmless. *Treichler*, 775 F.3d at 1099.

### B. Credibility Determination

#### 1. Adverse Credibility Based on Medical Reports

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for discounting his allegations of pain and physical dysfunction prior to January 25, 2022. ECF No. 9 at 12–16. The Commissioner responds that the ALJ reasonably found Plaintiff less limited during the earlier period based on objective findings and Plaintiff's own reports of functioning. ECF No. 11 at 2–6. The Court agrees with the Commissioner.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). "First the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably produce the pain or other symptoms alleged." *Id.* (citation modified). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the 'ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This requires the ALJ to identify "which testimony she [finds] not credible, and . . . which evidence contradict[s] that testimony." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).

Here, the ALJ found that the first step of the credibility analysis was satisfied. She first identified Plaintiff's allegations, namely, that he experienced "balance disturbance, and pain symptoms affecting his ability to stand, sit, or walk for extended periods," had reduced his "daily walking from six miles to three miles," and could no longer engage in prior hobbies. AR 22. She

then found that his impairments could "reasonably be expected to cause the alleged symptoms." *Id.* At step two, however, the ALJ found that Plaintiff's statements concerning the severity of his symptoms were not fully supported prior to January 25, 2022. *Id.*

While the ALJ's explanation could be clearer, it does not consist solely of "boilerplate language, without any specific reference to the testimony [she] found to be not credible and why." *Jacqueline B. v. O'Malley*, No. 23-cv-02178-JST, 2024 WL 1772849, at *3 (N.D. Cal. Apr. 23, 2024). Rather, the ALJ identified the nature of Plaintiff's allegations and cited specific medical findings, such as normal gait, full motor strength, intact sensation, normal reflexes, and negative straight-leg-raise testing, as inconsistent with the degree of limitation alleged. AR 22–24. The basis for the ALJ's reasoning can reasonably be discerned from her citations to the record. *Burrell v. Colvin,* 775 F.3d 1133, 1138 (9th Cir. 2014) ("Our decisions make clear that we may not take a general finding . . . and comb the administrative record to find specific conflicts.").

The underlying record reflects mixed findings during 2020. Examinations documented reduced range of motion, muscle spasms, and positive straight leg raising, but also noted normal gait, full strength, and normal reflexes. AR 6581–6582, 6590, 6876. An evaluation later that year likewise reflected some abnormalities but characterized them as mild and "evolving." AR 6748–6752. Considering this mixed record, the ALJ interpreted the evidence as supporting some limitations, but not to the degree that Plaintiff alleged. AR 23. In particular, the ALJ relied on the objective findings discussed above as inconsistent with Plaintiff's claims of disabling limitations in standing, walking, and other basic functions. In doing so, she clearly identified the specific testimony she found unpersuasive and the objective evidence that undermined those allegations. *Garrison*, 759 F.3d at 1014–15.

Because the ALJ identified "which testimony she found not credible and . . . which evidence contradicted that testimony" she met her responsibility for providing the "'reasons upon which [her] adverse determination is based.'" *Brown-Hunter*, 806 F.3d at 494–95 (citing *Treichler*, 775 F.3d at 1103).

### 2. Adverse Credibility Based Upon Activities of Daily Living

An ALJ may come to an adverse credibility determination based on activities of daily

living when they contradict the claimant's other testimony or meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Such a determination must also meet the clear and convincing standard. *Garrison*, 759 F.3d at 1016. Additionally, even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *See Valentine v. Commissioner Social Sec. Admin,* 574 F.3d 685, 693 (9th Cir. 2009) ("The ALJ identified evidence that 'undermine[d] [plaintiff's] complaints,' and found such evidence credible." (citations omitted)). When evaluating such testimony, courts are permitted to weigh the objective medical evidence in the record if it is inconsistent with the claimant's subjective testimony. *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022).

The ALJ discounted Plaintiff's testimony based on his self-reported ability, in an SSA Function Report to "prepare meals, shop, drive, perform household chores, and walk three mils[*sic*] per day." AR 24. The same report reflects significant limitations, including that he performs only light household tasks, cannot sit for more than two hours, experiences pain with bending and squatting, can lift only light objects, and can walk approximately two miles before requiring extended rest. AR 265–272.

Daily activities can only contradict a claimant's symptom allegations "if [he] is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). The ALJ did not explicitly analyze how Plaintiff's self-reported activities transfer to a work setting. However, she did not rely on these activities in isolation or treat them as conclusive evidence of an ability to sustain full-time work. Rather, she considered them alongside objective medical findings in evaluating the consistency of Plaintiff's allegations. AR 24 ("Evidence supporting less restrictive limitations includes examination findings showing full motor strength, normal gait, intact sensation, [and] full grip strength . . . [a]dditionally, the claimant's own statements supported less restrictive limitations."). That is a permissible evaluation of daily activities in disability proceedings. *Smartt*, 53 F.4th at 498.

Plaintiff's argument that the ALJ relied on activities reported in February 2022, which

postdate the established onset of disability, is unpersuasive. ECF No. 9 at 15. The ALJ cited those activities as reflecting greater functioning than Plaintiff reported, yet nevertheless found Plaintiff's limitations rose to the level of disability at that point. In other words, the February 2022 evidence may undercut Plaintiff's credibility without undercutting the broader finding that he was in fact disabled by January 2022.

Although the ALJ did not explicitly discuss every qualifying limitation reflected in the function report, her reasoning is sufficiently specific to permit meaningful review and to support her conclusion that Plaintiff's allegations were not fully consistent with the record prior to January 25, 2022.

### C.    Medical Opinion Analysis

Plaintiff argues that the ALJ mischaracterized the opinions of Drs. Fiesser and Golchehreh and failed to account for limitations restricting him to less than four hours total of sitting, standing, and walking. ECF No. 9 at 16–19. The Commissioner responds that the ALJ reasonably found these opinions persuasive only for the period after January 2022 because they were consistent with worsening findings during that period and inconsistent with earlier evidence. ECF No. 11 at 6–8. The Court agrees with the Commissioner.

An ALJ must explain how they "considered the supportability and consistency factors for a medical source's medical opinions," because these are the "most important factors" when determining the persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(a), (b)(2). Medical opinions that are more consistent with the record as a whole are more persuasive. *Id.* § 404.1520c(c)(2). Although the prior "specific and legitimate" standard no longer applies, an ALJ may not reject an examining physician's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Here, the ALJ expressly found that the opinions of Drs. Fiesser and Golchehreh were "well supported," but determined that their more restrictive limitations were not persuasive for the period prior to January 25, 2022, because they were "inconsistent with the record of evidence prior to January 25, 2022, which supports less restrictive limitations in standing, sitting, walking than

opined." AR 26–27, 32–33. Those opinions were rendered in February 2022 and January 2023 and describe Plaintiff's functioning at the time of those evaluations, rather than assessing his limitations during the earlier period. AR 2131–2132, 2161, 4100, 4521–4522. Furthermore, the underlying reports do not distinguish between earlier and later periods or offer any retrospective assessment of Plaintiff's functioning. AR 2131–2132, 2161, 4100, 4521–4522. The ALJ therefore sensibly found these opinions consistent with the record beginning in 2022, when the first evaluation was performed and when the rest of the record began to reflect worsening symptoms. AR 27, 33.

Plaintiff is correct that the ALJ's description of the sitting, standing, and walking limitations omits the qualifier "less than" four hours, ECF No. 9 at 16, but the Court does not view this as an inconsistency. The underlying opinions state that he was limited to less than four hours total of standing, walking, and sitting in a workday. AR 2131–2132, 2161, 4100, 4521–4522. The ALJ described the opinions as allowing "4 hours" of such activities. AR 26–27. But an assessment of "less than four hours" effectively conveys the same limitation as "four hours," and these time estimates are inherently approximate and do not reflect precise measurements.

Moreover, even if "less than four hours" were meaningfully different than "four hours" in this context, the ALJ only credited Fiesser and Golchehreh's reports for the period after January 2022, so any imprecision in the four-hour estimate does not alter the nondisability determination for the earlier period. Any error is therefore harmless because it is "inconsequential to the ultimate nondisability determination." *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).

In any event, the ALJ's determination that the limitations identified by Fiesser and Golchehreh did not apply to the period prior to January 25, 2022, is consistent with the date those examinations were performed and with the medical record as a whole. 20 C.F.R. § 404.1520c(c)(2).

### D.    Misclassification of Past Work

Plaintiff argues that the ALJ erred at step four by misclassifying his past relevant work as a stock control supervisor rather than a stock clerk, and by relying on the least demanding aspects of his job. ECF No. 9 at 20–22. The Commissioner responds that the ALJ reasonably relied on

11

Plaintiff's own testimony and the vocational expert's classification of that work. ECF No. 11 at 9–11. The Court agrees with Plaintiff.

At step four, a claimant is not disabled if he can perform his past relevant work, either as actually performed or as generally performed in the national economy. 20 C.F.R. § 404.1520(f); § 404.1560(b)(2), (c). The claimant is the primary source of vocational information, but an ALJ may rely on vocational expert testimony in classifying past work and determining whether it can be performed given the claimant's residual functional capacity. *See* Soc. Sec. Ruling, SSR 82-62; Titles II & XVI: A Disability Claimant's Capacity to Do Past Relevant Work, in Gen., SSR 82-62 (S.S.A. 1982); 20 C.F.R. § 404.1560(b)(2).[3]

Here, the record does not support the ALJ's classification of Plaintiff's past work as a stock control supervisor. Plaintiff's testimony reflects that supervisory duties occupied only a minimal portion of his time. He stated that he supervised other employees for "5% at most" of his duties and that "most of the time" he did not have people to supervise. AR 67. He further explained that his "supervision role was not to supervise people" and that his work primarily involved performing manual tasks alongside others, including unloading and loading pallets. AR 68–69.

Plaintiff's written work history report is consistent with that testimony. He reported supervising only two individuals for a small portion of the workday and described substantial physical demands, including frequent lifting of 50 pounds and lifting up to 100 pounds. AR 280. He also reported duties involving handling large objects, stocking shelves, and unloading goods. *Id.* Although Plaintiff identified inventory-related responsibilities such as tracking incoming merchandise, those tasks appear alongside, rather than in place of, significant manual labor. *Id.*

The vocational expert classified the position as a stock control supervisor, and the ALJ adopted that classification. AR 28, 34, 63, 69. But Plaintiff's description of his work does not align with the DOT description of that position, which emphasizes coordination of inventory

---

[3] On June 22, 2024, SSR 82-62 was rescinded and replaced with SSR 24-2p. *See* Soc. Sec. Ruling 24-2P; Titles II & XVI: How We Evaluate Past Relevant Work, 89 FR 48479, n.1. In cases like this, where the ALJ issued a decision prior to that date, courts review the agency's final decision under the rules that were in effect at the time the decision was made. *Id.*

United States District Court
Northern District of California

activities and supervisory responsibilities rather than primarily manual labor. *See* DOT No. 222.137-038, 1991 WL 672072. Instead, Plaintiff argues that his description more closely aligns with the DOT description of a stock clerk, which includes stocking merchandise, unloading shipments, handling goods, and performing other physically demanding tasks. ECF No. 9 at 21–22; DOT No. 299.367-014, 1991 WL 672631.

The Ninth Circuit has held that an ALJ may not classify a claimant's past work according to its least demanding function where that function constitutes only a minority of the claimant's actual duties. *Valencia v. Heckler*, 751 F.2d 1082, 1086 (9th Cir. 1985) (ALJ erred in classifying claimant as a tomato sorter where she primarily performed other tasks); *Carmickle v. Commissioner*, 533 F.3d 1155, 1166 (9th Cir. 2008) (ALJ erred in holding position was "purely supervisory" where only 20 percent of duties involved supervision). These cases involve situations in which "the least demanding aspect" of the claimant's job was something the claimant performed less than half the time, making it error to equate that task with the occupation as a whole. *Stacy v. Colvin*, 825 F.3d 563, 570 (9th Cir. 2016) (distinguishing cases where the least demanding function comprised only a minority of the claimant's duties). *Stacy* recognized a narrow circumstance in which such a classification may be appropriate where the claimant performed the least demanding function most of the time and the DOT defines the position as "requiring only that least demanding function." *Id.* That circumstance is not present here.

The record reflects that supervisory and inventory-related tasks were only a small portion of Plaintiff's work, while the majority of his time was spent performing physically demanding manual labor. AR 67–69, 280. Accordingly, the ALJ erred in treating those aspects as representative of the occupation.

**CONCLUSION**

For the foregoing reasons, the Court concludes that the ALJ erred at step four in classifying Plaintiff's past relevant work and in determining that Plaintiff could perform that work prior to January 25, 2022. The Commissioner's decision is therefore REVERSED, and this case is REMANDED for further proceedings consistent with this Order. On remand, the ALJ is directed to reassess the classification of Plaintiff's past relevant work and the step-four determination in

13

light of the record as a whole, and to reconsider the nondisability finding for the period prior to January 25, 2022.  The clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated:  May 11, 2026



JON S. TIGAR
United States District Judge